UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SAMUEL KATZ, ALEXANDER BRAURMAN, and
LYNNE RHODES, on their own behalf and on behalf
of all others similarly situated,

                                Petitioners,

      -against-

MEZZI MARKETING, LLC,

                                Respondent.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**18-MC-2122 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Petitioners Samuel Katz, Alexander Braurman, and Lynne Rhodes seek an order compelling Respondent Mezzi Marketing, LLC ("Mezzi"), to show cause why it should not be held in contempt of court for failure to comply with a subpoena that Petitioners have served upon Mezzi. (See Notice of Mot. (Dkt. 1); Mem. in Supp. of Mot. ("Mem.") (Dkt. 2) at 1, 9.) For the following reasons, the court holds that Petitioners' motion for an order to show cause why Mezzi should not be held in contempt (the "Motion") is premature and treats Petitioners' motion as a motion to compel, which is GRANTED.

**I. BACKGROUND**

On January 8, 2018, Liberty Power Corp., LLC ("Liberty Power"), defendant in a civil action alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., removed the case to the United States District Court for the District of Massachusetts. (Decl. of Ethan Preston ("Preston Decl.") (Dkt. 3 at ECF p.1) ¶ 3.) That complaint "alleges a variety of calls in violation of the TCPA, including several calls which identified the originating telephone number as (508) 202-1270." (Id. ¶ 4.) On February 13, 2018, Liberty Power filed a third-party complaint in which it alleged that Mezzi made the phone calls in question, in breach

1

of a contract between Liberty Power and Mezzi whereby Mezzi agreed to perform marketing and customer acquisition services by use of telesales activities" for Liberty Power; and that, to the extent Liberty Power is liable under the TCPA, it is entitled to indemnification or contribution from Mezzi. (See id. ¶ 5; Third-Party Compl. of Liberty Power (Dkt. 11 in McDermet v. Liberty Power Corp., No. 18-CV-10043 (D. Mass. filed Jan. 9, 2018)) ¶¶ 7, 14.)

On March 16, 2018, Petitioners filed the suit that gives rise to the Motion. (Preston Decl. ¶ 2.) That suit, a class action, was also filed in the District of Massachusetts and alleges similar violations of the TCPA by defendants Liberty Power Corp., LLC, and Liberty Power Holdings, LLC (collectively, "Liberty Power"). (See id.) As in the McDermet litigation, Liberty Power subsequently filed a third-party complaint alleging that it is entitled to indemnification from Mezzi and that, even if it is not, Mezzi owes Liberty Power contribution for Mezzi's negligence and breach of contract. (See Third-Party Compl. Against Mezzi (Dkt. 28 at ECF p.16 in Katz v. Liberty Power Corp., No. 18-CV-10506 (D. Mass. filed Mar. 16, 2018) ["Katz v. Liberty Power"]) ¶¶ 10, 17-44.)

On May 22, 2018, having learned about Mezzi's alleged involvement in Liberty Power's alleged violations of the TCPA through the McDermet litigation, Petitioners served a subpoena for production of documents on Mezzi via Mezzi's New Jersey agent, Mian Sultan Mehmood ("Sultan").[1] (Preston Decl. ¶ 10.) Petitioners seek "all communications, call records, audio records, lead records, billing records, payment records, and other documents received from, provided to, and/or related to [Liberty Power], their agents, partners, attorneys, servants, employees, assignees, affiliates, and/or anyone acting for or on behalf of them" and an "oral deposition of Mezzi." (Preservation Instrs. & Produc. Schedule for Subpoena (Dkt. 3 at ECF

---

[1] On June 5, 2018, Petitioners additionally served a similar subpoena on Mezzi via Mezzi's Delaware agent. (Preston Decl. ¶ 15.)

2

p.27); Notice of Rule 30(b)(6) Dep. of Mezzi (Dkt. 3 at ECF p.41).) Petitioners also served a subpoena for a Rule 30(b)(6) deposition. (Preston Decl. ¶ 10.) Later that day, Sultan called Petitioners' counsel and informed him that he had received the subpoenas and that he knew people at Mezzi, but that he did not know that Mezzi had designated him as their agent. (Id. ¶ 11.) Petitioners' counsel informed Sultan that he should send copies of the subpoenas to Mezzi and that Mezzi could be held in contempt if it did not comply with the subpoenas. (Id.) Two days later, Petitioners' counsel sent an email to Sultan to memorialize the contents of their telephone call, to which Sultan responded, "I don't have any relation or I have nothing to do with this company Mezzi market." (Id. ¶ 13.) Petitioners' counsel stated that that was not his recollection of the call and he provided Sultan with a copy of the state record designating Sultan as Mezzi's agent for service of process. (Id.)

On June 1, 2018, Asad Rahman, counsel to Mezzi for purposes not relating to the District of Massachusetts litigation, informed Petitioners' counsel that Mezzi had contacted him regarding the subpoenas. (Id. ¶ 14.) In an email on June 3, 2018, Rahman indicated that Mezzi thought the subpoenas were overly broad and that it might file to quash them. (Id.) Petitioners' counsel has not received "any other communication from Mezzi which stated objections to [Petitioners'] subpoenas any more clearly than Mr. Rahman's June 3 email." (Id.)

On July 11, 2018, Rahman informed Petitioners' counsel that Liberty Power had threatened Mezzi with litigation if Mezzi produced "records outside of any records related to Katz." (Id. ¶ 16.) On July 16, 2018, Rahman advised Petitioners' counsel that Mezzi had deleted its copies of "certain relevant call records," though Rahman indicated that Mezzi "might

3

still have access to relevant call records elsewhere."[2] (Id. ¶ 17.) That same day, Petitioners' counsel told Rahman that Petitioners were reserving the right to file a motion for contempt. (Id.) Rahman told Petitioners' counsel that Mezzi was "working towards a resolution so there is no need to waste time or money with a motion to compel." (Id.) The following day, Petitioners' counsel again advised Rahman that Petitioners "expected to bring a motion to enforce the subpoena promptly if Mezzi continued to delay without making any progress." (Id.) The day after that, Rahman indicated that Mezzi was going to "dedicat[e] a staff person to perform the collections" and asked for "a cloud server link where Mezzi could upload data"; however, as of the filing of this motion, Mezzi has not produced any responsive documents. (Id.)

It bears noting that, according to filings in the District of Massachusetts, Liberty Power has withheld its "consent to [Mezzi's] production of documents other than those related solely to the named plaintiff Samuel Katz" pursuant to "a contractual confidentiality provision that prevents Mezzi Marketing from producing the requested documents absent Liberty Power's express written consent." (Aug. 3, 2018, Decl. of Ethan Preston (Dkt. 54-2 in Katz v. Liberty Power) ¶ 28.) While Liberty Power subsequently "indicated they would refrain from any interference with [Petitioners'] subpoenas in the future" (id. ¶ 32), as of August 3, 2018, Petitioners were not aware of any evidence that Liberty Power had "contacted Mezzi to withdraw their objections to Mezzi's compliance with [Petitioners'] subpoenas" (id. ¶ 33). On August 3, 2018, Petitioners moved the District of Massachusetts for an order requiring Liberty Power to immediately withdraw any direction or instruction to any third party not to comply with [Petitioners'] subpoenas, and to produce all communications with witnesses about [Petitioners] subpoenas and to include [Petitioners] on all communications with witnesses about [Petitioners']

---

[2] Ali Nadeem, allegedly the principal for Mezzi, had previously told Petitioners' counsel that "Mezzi either did not keep audio recordings or it did not [keep] call logs longer than either 90 or 80 days because of storage limitations." (Aug. 3, 2018, Decl. of Ethan Preston (Dkt. 54-2 in Katz v. Liberty Power) ¶ 24.)

4

subpoenas after the date of the order." (Mot. for Preservation Order & Protective Order (Dkt. 54 in Katz v. Liberty Power).) That motion remains pending before the District of Massachusetts.

On August 6, 2018, Petitioners filed the Motion. (Notice of Mot.) On August 8, 2018, Petitioners served a copy of the Motion on Sultan, as Mezzi's New Jersey agent. (See N.J. Affirmation of Service of Mot. (Dkt. 4).) The following day, Petitioners served a copy of the Motion on Mezzi's Delaware agent. (See Del. Affirmation of Service of Mot. (Dkt. 5).) Mezzi's response to the Motion was due by no later than August 23, 2018. See Local Civ. R. 6.1(b) (stating that "any opposing affidavits and answering memoranda" to a Rule 45(g) motion must be "served within fourteen days after service of the moving papers"). To date, Mezzi has not responded to the Motion or entered an appearance.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 45(g), the court for the district where compliance with a subpoena is sought "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." While Rule 45 grants the court power to hold a party in contempt "simply on the basis of failure to comply with a subpoena," PaineWebber Inc. v. Acstar Ins. Co., 211 F.R.D. 247, 249 (S.D.N.Y. 2002); accord Hunter TBA, Inc. v. Triple V Sales, 250 F.R.D. 116, 117 (E.D.N.Y. 2008), a court should not usually order "contempt sanctions without first ordering compliance with a subpoena," Fed. R. Civ. P. 45(g) advisory committee's note to 2013 amendment; accord, e.g., Sheet Metal Workers' Nat'l Pension Fund v. Rhb Installations, Inc., No. 12-CV-2981 (JS) (ARL), 2016 WL 128153, at *2 (E.D.N.Y. Jan. 12, 2016); see 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2465 (3d ed. 2018) ("The district judge normally will preface a contempt citation

5

with an order directing either compliance with the subpoena or a showing of an excuse for the noncompliance.").

## III. DISCUSSION

### A. Service of Process

Before assessing the merits of the Motion, the court must assure itself that enforcement of the subpoena against Mezzi would accord with the due-process requirements of Rule 45. See Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas, 262 F.R.D. 293, 304 (S.D.N.Y. 2009). Under Rule 45, "[s]erving a subpoena requires delivering a copy to the named person." Fed. R. Civ. P. 45(b)(1). Because Rule 45 "does not specify what constitutes personal service on a corporation in the United States . . . courts in this Circuit rely on the service of process requirements on corporations set out in Federal Rule of Civil Procedure 4." Aristocrat Leisure, 262 F.R.D. at 305. Under Rule 4, service on a corporation in the United States may be made "by delivering a copy of the [subpoena] to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Such service accords with the requirements for delivery of a subpoena under Rule 45 because it is "reasonably designed to ensure actual receipt of a subpoena by a witness." Sheet Metal Workers' Nat'l Pension Fund, 2016 WL 128153, at *2 (quoting Simmons v. Fervent Elec. Corp., No. 14-CV-1804 (ARR) (MDG), 2014 WL 4285762, at *1 (E.D.N.Y. Aug. 29, 2014)).

On May 22, 2018, Petitioners served the subpoenas on Mezzi through Sultan, Mezzi's designated agent, at Mezzi's principal place of business. (See N.J. Subpoena to Produce Docs.; Proof of Service for N.J. Subpoena to Produce Docs. (Dkt. 3 at ECF p.37).) On June 5, 2018, Petitioners served the subpoenas on Mezzi through its designated agent at "The Company Corporation" in Wilmington, Delaware. (See Del. Subpoena to Produce Docs. (Dkt. 3 at ECF

6

p.51); Proof of Service for Del. Subpoena to Produce Docs. (Dkt. 3 at ECF p.64).) The same service was effected for the Motion. (See N.J. Affirmation of Service of Mot.; Del. Affirmation of Service of Mot.) Additionally, Mezzi—through Rahman, its counsel—has exchanged numerous communications with Petitioners about the subpoena and Petitioners' other discovery requests. (See Preston Decl. ¶¶ 14, 16, 17.)

Petitioners personally served the subpoenas and the Motion on Mezzi at its principal place of business. This fact, by itself, would be enough to assure the court that the requirements of Rule 45 have been satisfied, regardless of any arguments Mezzi might make as to whether Sultan was actually its agent for service of process. (Cf. Preston Decl. ¶ 13.) In any case, Petitioners' alternative service on Mezzi's Delaware agent was also valid. See Ultradent Prods. v. Hayman, No. M8-85 (RPP), 2002 WL 31119425, at *3 (S.D.N.Y. Sept. 24, 2002) ("Service of a subpoena upon the Secretary of State as the designated agent to a corporation is reasonably measured to insure the actual receipt of the subpoena by the corporation."). Finally, the court notes that, despite any objections Mezzi could make regarding the service of process, Mezzi's constant communication with Petitioners regarding the subpoenas shows that it has awareness of the subpoenas and the requirement that it respond thereto. Cf. Sheet Metal Workers' Nat'l Pension Fund, 2016 WL 128153, at *2 ("[The nonparty] clearly received the subpoena as his attorney . . . requested two extensions of time to comply therewith."). Mezzi has fair and timely notice of its obligation to produce the requested documents.

**B.     Order to Show Cause / Motion to Compel**

First, the court clarifies the scope of the requested relief. The court is unsure whether Petitioners desire Mezzi's compliance with both their subpoena to produce documents and their subpoena to testify at a deposition, or whether the Motion would be rendered unnecessary if

Mezzi responded only to the subpoena to produce documents. Under one reading of Petitioners' moving papers, the request in the notice of motion for an order to show cause for Mezzi's "failure to comply with subpoenas" could encompass both the subpoena for documents and the subpoena for deposition testimony. (Notice of Mot. (emphasis added).) Of course, the use of the plural "subpoenas" could refer to the fact that Petitioners have served their subpoenas on Mezzi twice—once with its agent in New Jersey, and once with its agent in Delaware. Additionally, the memorandum in support of the Motion specifically requests that the court "order Mezzi to show cause why it should not be held in contempt unless . . . it has produced all responsive documents by the date of the Court's order or set in a date certain shortly thereafter." (Mem. at 9.) The memorandum does not contain any reference to the subpoena to testify at a deposition. (See id.) Accordingly, the court construes the Motion as seeking contempt sanctions based on Mezzi's failure to comply with Petitioners' subpoena for production of documents.[3]

As set forth above, a court should not hold a nonparty in contempt for failure to comply with a subpoena unless that court has already ordered the nonparty's compliance. See, e.g., Sheet Metal Workers' Nat'l Pension Fund, 2016 WL 128153, at *2. This court has not yet ordered Mezzi to comply with the subpoena for production of documents. The court therefore defers decision on Petitioners' motion to hold Mezzi in contempt and instead treats the Motion as a motion to compel, which it grants. Cf. id. If Mezzi believes that its production of documents is precluded by its contractual obligations to Liberty Power (see Preston Decl. ¶ 16), it must present that argument to this court as an excuse for its failure to comply. Petitioners may renew their motion for contempt if, by September 12, 2018, Mezzi has either not complied with the subpoena or not provided the court with an adequate excuse for its noncompliance. See Jalayer

---

[3] If Petitioners intend the Motion to encompass the subpoena to testify at a deposition, they may make such a clarification in writing if it becomes necessary for them to renew their motion, as discussed below.

v. Stigliano, No. 10-CV-2285 (LDH) (AKT), 2016 WL 5477600, at *2 (E.D.N.Y. Sept. 29, 2016) ("[A] non-party who knowingly fails to comply with a duly issued and served subpoena . . . and who provides no justification for his or her failure to [comply] may be found in contempt."); 9A Wright & Miller, supra, § 2465.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES WITHOUT PREJDUICE Petitioners' motion for contempt (Dkt. 1) and DIRECTS Mezzi, by no later than September 12, 2018, either to (1) produce all documents requested in the subpoena that was served on Mezzi on May 22, 2018; or (2) provide this court with a memorandum of law setting forth an adequate excuse for its noncompliance with the subpoena. Should Mezzi fail to comply with this memorandum and order, Petitioners may renew their motion for contempt. Mezzi is cautioned that failure to comply with this memorandum and order may result in the undersigned holding Mezzi in contempt of court, including the imposition of attorneys' fees and fines.

Petitioners are DIRECTED to serve a copy of this memorandum and order upon Mezzi by personal service by no later than August 29, 2018, and file proof of such service with the court.

SO ORDERED.

Dated: Brooklyn, New York
August 27, 2018

/s Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge